**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 07-CV-0320-MJR |
| KANSAS CITY SOUTHERN RAILWAY COMPANY, and GATEWAY EASTERN RAILWAY COMPANY, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**A. Introduction and Factual/Procedural Background**

On April 26, 2007, Union Pacific Railroad Company (Union Pacific) filed a three-count complaint in this district court (Doc. 2). Union Pacific alleges that Kansas City Southern Railway Company (K.C. Southern) and Gateway Eastern Railway Company (Gateway Eastern) breached a 1993 contract by refusing to permit Union Pacific to use approximately two miles of trackage between points known as Q Tower and Willows Tower in East St. Louis, Illinois. Union Pacific seeks a declaratory judgment determining that the contract is binding and remains in effect, and a permanent injunction prohibiting K.C. Southern and Gateway Eastern from further preventing Union Pacific's use of the trackage.

The contract at issue is a December 20, 1993 Agreement (the 1993 Agreement) between a number of railroad companies. Therein, Gateway Eastern and Gateway Western Railway Company, along with Southern Pacific Transportation Company (Southern Pacific), SPCSL Corp.,

St. Louis Southwestern Railway Company, and Denver and Rio Grande Western Railroad Company, resolved "certain outstanding differences among them." **Doc. 119-2, Exh. 6.** In essence, the contract appears to be in the mode of a settlement agreement, whereby certain parties would dismiss various lawsuits and forego objections to certain transactions being considered by the Interstate Commerce Commission in exchange for specific consideration, including the usage, maintenance, and construction of certain trackage.

One provision in the contract involved the section of track between Q Tower and Willows Tower. At the time of the 1993 Agreement, Conrail owned this trackage, and Southern Pacific's affiliate, St. Louis Southwestern Railway Company, had previously contracted to use the track for interchange with Conrail (the 1991 Agreement).[1] **Doc. 119-6, Exh. E.** At some point in 1993, Gateway Eastern[2] entered into negotiations with Conrail to acquire the subject trackage. With this in mind, the parties to the 1993 Agreement negotiated a provision at Paragraph 7 whereby Gateway Eastern agreed to "permit" Southern Pacific's "continued use" of the trackage in question for the purposes of interchange with Conrail, its successors, and assigns. **Doc. 119-2, Exh. A, ¶ 7.** In early 1994, Gateway Eastern did acquire the trackage in question from Conrail (the 1994 Agreement). **Doc. 119-9, Exh. H.** However, the 1994 Agreement also ensured that Conrail would be permitted to grant its tenants, such as Southern Pacific, the right to use the trackage. *See id.* **at § 2(e).**

Southern Pacific continued to run trains over the trackage for purposes of interchange

---

[1] The only parties to the 1991 Agreement were Conrail and St. Louis Southwestern Railway Company.

[2] Gateway Eastern is a wholly owned subsidiary of K.C. Southern (*see* Docs. 2 & 47).

with Conrail at the Rose Lake Yard in East St. Louis. In 1998, Union Pacific merged into Southern Pacific, which in turn changed its name to "Union Pacific Railroad Company" (Doc. 53, Exh. 5).[3] In 1999, the CSX Corporation (CSX) acquired certain of Conrail's assets, including the Rose Lake Yard. At some point around this time, Union Pacific stopped using the trackage in question.

In 2004, however, Union Pacific sought to run its trains on the subject trackage again. K.C. Southern and Gateway Eastern refused this demand. Union Pacific then filed this action seeking to enforce Paragraph 7 of the 1993 Agreement, which it alleges grants broad rights to use the trackage in question for purposes of interchange with CSX at the Rose Lake Yard. Defendants primarily contend that the 1993 Agreement did not contemplate such a broad grant of rights.

Late in the litigation, however, the Defendants tried to moot the parties' dispute by attempting to rescind Paragraph 7 of the 1993 Agreement. **Doc. 119-4, Exh. C.** Specifically, on September 3, 2008, Defendants provided Union Pacific with a letter purporting to terminate Paragraph 7, but leaving all other provisions of the 1993 Agreement in effect. Defendants claim that it can unilaterally terminate Paragraph 7 because it is an agreement of indefinite duration that is severable from the remainder of the contract.

Accordingly, Defendants have filed a motion to dismiss under **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**, claiming that this Court lacks subject matter jurisdiction because the termination letter moots the parties' dispute (Doc. 118). For the reasons explained herein, the Court

---

[3] In fact, other than Gateway Eastern, all of the railroad companies involved in the 1993 Agreement ultimately merged with either Union Pacific or K.C. Southern. On October 10, 2001, Gateway Western merged into K.C. Southern (Docs. 2 & 47). The Denver and Rio Grande Western Railroad Company and SPCSL Corporation merged into Union Pacific on June 30, 1997 (Doc. 53, Exhs. 11 & 12). Finally, on September 30, 1997, the St. Louis Southwestern Railways Company, an affiliate of Southern Pacific, merged into SSW Merger Corporation, which merged into Union Pacific on the same date (Doc. 53, Exhs. 9 & 10).

**DENIES** the Defendants' motion.

## B.  Analysis

The Defendants' argument is premised on the belief that Paragraph 7 of the 1993 Agreement can be isolated and terminated, without any effect as to the rest of the contract, on the grounds that Paragraph 7 is a severable provision of indefinite duration.  Severability is important under Illinois law, because the general rule is that a contract may only be rescinded *in toto*.  In order to terminate only a portion or single provision of a contract while leaving all other provisions in force, the provision in question must be severable from the rest of the contract.  ***Kaplan v. Keith*, 377 N.E.2d 279, 281 (Ill. App. Ct. 1978) ("[T]he rule that rescission of a contract must be in toto does not apply to a contract of which the parts are so severable as to form independent contracts.");** *see Keeshin v. Levin***, 334 N.E.2d 898, 906 (Ill. App. Ct. 1975) ("Where a contract is severable, a party may exercise a right to rescind for fraud a part of the contract, but need not rescind in toto and restore all of the consideration he has received from the party at fault." (internal quotations omitted)).**

There is nothing to indicate that Paragraph 7 is severable from the rest of the terms in the Agreement.  "In determining whether a contract is divisible . . . a court attempts to effectuate the intent of the parties."  ***Bjork v. Draper*, 886 N.E.2d 563, 576 (Ill. App. Ct. 2008).**  In order to decide whether a particular provision is in fact severable, the Court asks whether "the parties assented to all of the promises as a single whole so that there would have been no bargain whatsoever if any promise or set of promises were struck out."  ***Id.* at 576-77 (quoting *Meredith v. Knapp*, 211 N.E.2d 151 (1965) (internal quotations omitted)).**

With these guideposts in mind, the Court finds that Paragraph 7 is clearly not

severable from the rest of the agreement. The 1993 Agreement is a settlement agreement with a singular purpose: "to resolve certain outstanding differences among [the parties]." By all indications, each provision was a necessary and integral component of the bargain, and the parties gave up valuable consideration in exchange for the collection of provisions therein, including Paragraph 7.

Also supporting the conclusion that the contract's provisions constitute a single whole is the fact that there is no corresponding consideration that separately ties to Paragraph 7. In light of that fact, it would be entirely inequitable to sever only Paragraph 7, which was included for the sole benefit of Plaintiff, while the Defendants retain all of the benefits derived from the other provisions. This is especially so since the parties agree that all other provisions have been complied with, and that it would be impossible to undo that compliance. In light of all of these considerations, the Court is compelled to conclude that the parties did not intend for the provisions of the 1993 Agreement to be severable.

The Defendants' September 3, 2008 letter purports only to terminate Paragraph 7. But because Paragraph 7 is not a severable provision, the letter is not an effective rescission. As a result, the parties' dispute is not moot and the motion to dismiss must be denied.

### C. Conclusion

For all of the reasons explained above, the Court hereby **DENIES** the Defendants' motion to dismiss (Doc. 118).

**IT IS SO ORDERED.**

**DATED this 3d day of August 2009.**

>           **s/ Michael J. Reagan**
>           **MICHAEL J. REAGAN**
>           **United States District Judge**