**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 07-CV-0320-MJR ) |
| KANSAS CITY SOUTHERN RAILWAY COMPANY, and GATEWAY EASTERN RAILWAY COMPANY, | ) ) ) ) ) ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. Introduction and Factual/Procedural Background

On April 26, 2007, Union Pacific Railroad Company (Union Pacific) filed a three-count complaint in this district court (Doc. 2). Union Pacific alleges that Kansas City Southern Railway Company (K.C. Southern) and Gateway Eastern Railway Company (Gateway Eastern) breached a 1993 contract by refusing to permit Union Pacific to use approximately two miles of trackage between points known as Q Tower and Willows Tower in East St. Louis, Illinois. Union Pacific seeks a declaratory judgment determining that the contract is binding and remains in effect, and a permanent injunction prohibiting K.C. Southern and Gateway Eastern from further preventing Union Pacific's use of the trackage.

The contract at issue is a December 20, 1993 Agreement (the 1993 Agreement) between a number of railroad companies. Therein, Gateway Eastern and Gateway Western Railway Company, along with Southern Pacific Transportation Company (Southern Pacific), SPCSL Corp.,

St. Louis Southwestern Railway Company, and Denver and Rio Grande Western Railroad Company, resolved "certain outstanding differences among them." **Doc. 119-2, Exh. 6.**

One provision in the contract involved the section of track between Q Tower and Willows Tower. At the time of the 1993 Agreement, Conrail owned this trackage, and Southern Pacific's affiliate, St. Louis Southwestern Railway Company, had previously contracted to use the track for interchange with Conrail (the 1991 Agreement).[1] **Doc. 119-6, Exh. E.** At some point in 1993, Gateway Eastern[2] entered into negotiations with Conrail to acquire the subject trackage. With this in mind, the parties to the 1993 Agreement negotiated a provision at Paragraph 7 whereby Gateway Eastern agreed to "permit" Southern Pacific's "continued use" of the trackage in question for the purposes of interchange with Conrail, its successors, and assigns. **Doc. 119-2, Exh. A, ¶ 7.** Additionally, at Paragraph 17, the Agreement provided that the parties "agree to cooperate with each other to promptly complete all documentation and take all actions as may be necessary to fully and completely give effect to the terms of this Agreement." **Doc. 119-2, Exh. A, ¶ 17.**

In early 1994, Gateway Eastern did acquire the trackage in question from Conrail (the 1994 Agreement). **Doc. 119-9, Exh. H.** The 1994 Agreement also ensured that Conrail would be permitted to grant its tenants, such as Southern Pacific, the right to use the trackage. *See id.* **at § 2(e).** Southern Pacific continued to run trains over the trackage for purposes of interchange with Conrail at the Rose Lake Yard in East St. Louis. In 1998, Union Pacific merged into Southern

---

[1] The only parties to the 1991 Agreement were Conrail and St. Louis Southwestern Railway Company.

[2] Gateway Eastern is a wholly owned subsidiary of K.C. Southern (*see* Docs. 2 & 47).

Pacific, which in turn changed its name to "Union Pacific Railroad Company" (Doc. 53, Exh. 5).[3] In 1999, the CSX Corporation (CSX) acquired certain of Conrail's assets, including the Rose Lake Yard. At some point around this time, Union Pacific stopped using the trackage in question.

In 2004, however, Union Pacific sought to run its trains on the subject trackage again. K.C. Southern and Gateway Eastern refused this demand. Union Pacific then filed this action seeking to enforce Paragraph 7 of the 1993 Agreement, which Union Pacific alleges grants it broad rights to use the trackage in question for purposes of interchange with CSX at the Rose Lake Yard.

The Bench Trial in this action began on September 15, 2008 (*see* Doc. 103). During the course of the trial, counsel for Union Pacific elicited testimony from at least two witnesses regarding the provision at Paragraph 17. At the close of trail, Union Pacific sought to amend its complaint to conform to the evidence (Doc. 115). Specifically, Union Pacific seeks to add a new breach of contract claim that Defendants breached the 1993 Agreement by failing to prepare the necessary documentation to complete the trackage rights agreement discussed in Paragraph 7.

For the reasons explained herein, the Court **DENIES** Union Pacific's motion to amend.

### B. Analysis

**FEDERAL RULE OF CIVIL PROCEDURE 15(b)(2)** provides:

When an issue not raised by the pleadings is tried by the parties'

---

[3] In fact, all of the railroad companies involved in the 1993 Agreement ultimately merged with either Union Pacific or K.C. Southern. On October 10, 2001, Gateway Western merged into K.C. Southern (Docs. 2 & 47). The Denver and Rio Grande Western Railroad Company and SPCSL Corporation merged into Union Pacific on June 30, 1997 (Doc. 53, Exhs. 11 & 12). Finally, on September 30, 1997, the St. Louis Southwestern Railways Company, an affiliate of Southern Pacific, merged into SSW Merger Corporation, which merged into Union Pacific on the same date (Doc. 53, Exhs. 9 & 10).

> express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Union Pacific argues that Defendants impliedly consented to trying the issue of whether Paragraph 17 was breached due to the parties' failure to create a separate trackage rights agreement to commemorate the provision at Paragraph 7.

The Court must deny the requested amendment for a variety of reasons. First, the Court notes that the allegation that Paragraph 17 was breached represents an entirely new legal theory never before raised by Union Pacific. Prior to and during trial, Union Pacific's claim was that Paragraph 7 was itself a grant of trackage rights and that the Defendants' refusal to permit Union Pacific to use the trackage in question constitutes a breach of that agreement. Union Pacific's breach of contract claim under Paragraph 17 is separate and distinct because it contemplates the necessity for the parties to complete some separate written agreement so as to give effect to Paragraph 7. This claim could have been raised at any point in the litigation, including at the time the complaint was initially filed. But Union Pacific never once raised this claim until the close of trial. This delay prejudices the Defendants, because they were not prepared to present evidence or elicit testimony regarding any efforts made by the parties to execute a formal trackage rights agreement pursuant to Paragraphs 7 and 17. Indeed, it does not appear that any discovery was ever sought on this issue whatsoever.

However, the Court's primary concern is that Union Pacific did not so clearly raise the issue that Paragraph 17 was breached so as to warrant a finding that the Defendants' impliedly consented under Rule 15(b). In determining whether such consent was given, the Court asks

"whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." ***Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 568 (7th Cir. 2006) (quoting *In re Prescott*, 805 F.2d 719, 725 (7th Cir. 1986)).** True, Union Pacific did ask at least two witnesses about their understanding of Paragraph 17 in general terms. But this testimony was extremely limited and did not clearly signal that a separate breach of contract claim with respect to Paragraph 17 was being pursued. In fact, the parties discussed many of the provisions contained in the 1993 Agreement, many of which have no bearing in this case at all, except to provide context to the nature of the settlement agreement as a collection of provisions which together constituted consideration for the settlement. These facts lead the Court to conclude that Defendants did not impliedly consent to trying Union Pacific's new theory of breach.

        The Court also notes that the well-established law of this Circuit provides that a proposed amendment need not be permitted if its inclusion would be futile. Having already heard all of the parties' evidence, the Court finds that the addition of a breach of contract claim based on Paragraph 17 would be futile. In order to prevail on such a claim, Union Pacific must show that it performed all of the required conditions of the provision in question. ***Village of S. Elgin v. Waste Mgmt. of Ill.*, 810 N.E.2d 658, 669 (Ill.App.Ct. 2004).** Paragraph 17 requires both parties to the 1993 Agreement to "cooperate with each other" to complete whatever documentation was necessary to give effect to the Agreement. But there is nothing in the record as to what Union Pacific did, if anything, to "cooperate" with the Defendants to complete a thorough trackage rights agreement so as to give effect to Paragraph 7. And the only evidence of the Defendants' non-cooperation is that no such trackage rights agreement was ever completed between the parties. Furthermore, it does

not appear that Union Pacific or its predecessor ever pressed for any such agreement or complained that necessary documentation had not been completed. Nor did Union Pacific seek to draft a trackage agreement for the Defendants' approval. The lack of a formal trackage rights agreement was obviously not an issue until ten years (or more) after the 1993 Agreement was completed, and Paragraph 17 requires the parties to act "promptly." In short, the lack of evidence regarding Union Pacific's own cooperation with the completion of any necessary documentation dooms their proposed amendment.

The Court also notes, without finding, that the amendment would be futile because a breach of contract claim based on Paragraph 17 appears to be barred by the applicable statute of limitations. In Illinois, the statute of limitations for a breach of contract action is 10 years. **735 ILCS 5/13-206.** The agreement in question was finalized on December 20, 1993, and Paragraph 17 requires the parties to "promptly" complete any necessary documentation. Even if the Court generously reads the word "promptly," it is clear that Union Pacific's predecessor should have been aware by the end of 1995 that the Defendants had failed to comply with Paragraph 17 insofar as it relates to Paragraph 7. Thus, while the Court cannot pinpoint the exact date any such cause of action may have accrued, it was certainly no later than January 1, 2006. Even assuming that the proposed amendment relates back to the original complaint, the above-captioned action was not commenced until April 26, 2007—long after the statute of limitations had run.[4]

---

[4] Union Pacific inexplicably asserts that the proposed amendment would not constitute a new and different breach of contract claim. But Union Pacific's breach of contract theory as stated in the complaint has always rested on the claim that the Defendants violated the trackage rights granted in Paragraph 7 by denying Union Pacific access to the track in 2004. Obviously, any breach from the Defendants' alleged failure to "promptly" memorialize Paragraph 7 in a separate agreement had to have occurred at a much earlier time. In short, Union Pacific now seeks to allege two separate breach claims, which could not have accrued at the same time.

In short, Union Pacific's motion to amend under Rule 15(b) must be denied because it does not appear that the Defendants impliedly consented to trying Union Pacific's claim that Paragraph 17 was breached. Additionally, permitting Union Pacific's belated amendment would prejudice the Defendants, and the proposed amendment would be futile.

### C.  Conclusion

For all of the reasons explained herein, the Court **DENIES** Union Pacific's motion to amend its complaint to conform to the evidence (Doc. 115).

**IT IS SO ORDERED.**

**DATED this 3d day of August 2009.**

> **s/ Michael J. Reagan**
> **MICHAEL J. REAGAN**
> **United States District Judge**